UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAREN L. PALMER, ) | Criminal No.: 4:11-CR-130-E-EJL |
| ) | Civil No.:    4:14-CV-126-E-EJL |
| Petitioner, ) | |
| ) | MEMORANDUM DECISION |
| vs. ) | AND ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the Court on a motion by Daren Palmer ("Palmer") to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. 1)[1] In his Motion to Vacate, Palmer claims he received ineffective assistance of counsel in violation of the Sixth Amendment rights. The government filed a Motion to Dismiss Palmer's Petition (Dkt. 6) and Palmer has responded (Dkt. 8).[2] Having reviewed the record, including the record in the underlying criminal case, the Court will deny Palmer's motion.

---

[1] Unless otherwise referenced, all docket citations are to 4:14-cv-00126-EJL.

[2] It appears the government's Motion to Dismiss was erroneously docketed twice (Dkts. 5, 6), as was Palmer's Response to the government's Motion to Dismiss (Dkts. 7, 8). The Court will accordingly refer to the government's Motion to Dismiss as Dkt. 6 and to Palmer's Response as Dkt. 8.

## BACKGROUND

Palmer operated the Trigon Group, an investment company. (Dkt. 6, p. 2.) The government first met with Palmer in August, 2009, regarding claims from various investors that investments in Trigon Group had never been repaid. (PSR, ¶¶ 4-7.) Such investors reported Palmer had promised returns between 18 and 40 percent. (*Id.*) The Securities and Exchange Commission ("SEC") and Commodities Futures Trading Commission ("CFTC") thereafter filed suit against Palmer and Trigon Group in the District of Idaho. (*Id.*, ¶ 8.) The civil suit alleged, in part, that Palmer had operated an investment program in violation of registration, licensing, and anti-fraud requirements of the federal securities and commodities laws. (*Id.*) Mr. Wayne Klein ("Mr. Klein") of Lewis B. Freeman and Partners, Inc., was appointed as receiver. (*Id.*) The government thereafter worked with Mr. Klein to glean evidence for a criminal prosecution against Palmer. (Dkt. 6-1, pp. 39-40.)

On May 18, 2011, the government ultimately filed a two-count Information charging Palmer with Wire Fraud and Money Laundering. (4:11-cr-00130-EJL, Dkt. 1.) Palmer quickly indicated a desire to plead guilty, and, after seven days of extensive negotiations, Palmer entered a plea of guilty to Wire Fraud in violation of 18 U.S.C. § 1343 and Money Laundering in violation of 18 U.S.C. § 1957 on May 24, 2011. (Dkt. 6, p. 11.)

In exchange for his Rule 11 Plea Agreement ("plea agreement"), Palmer received the benefit of government motions, including a substantial assistance motion for downward departure, and an acceptance of responsibility downward departure. (Dkt. 6,

p. 6.) In exchange, Palmer made certain concessions in his plea agreement, including a "Waiver of Appeal and 28 U.S.C. § 2255 Rights." (Dkt. 6-1, pp. 10-11.) The specific waiver provision stated:

> A. In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.
> The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence. Further, if the defendant violates this waiver it will be a breach of this Agreement and the Government may withdraw from this Plea Agreement and take other remedial action.
> If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.
> B. Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:
>    1. the sentence imposed by the District Court exceeds the statutory maximum;
>    2. the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or
>    3. the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.
>
> **Notwithstanding subparagraph A, the defendant shall retain the right to file one habeas petition (motion under 28 U.S.C. § 2255) only if the defendant believes that the defendant received ineffective assistance of counsel based solely on information not known to the defendant at the time the District Court imposed sentence and which, in the exercise of reasonable diligence, could not have been known by the defendant at that time.**

(Dkt. 6-1, pp. 10-11) (emphasis added).

In addition to the aforementioned waiver, the factual background section of Palmer's plea agreement provided:

3

> If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt, which facts accurately represent the defendant's readily provable offense conduct… [R]ecords show that between 2002 and December, 2008, Daren Palmer received approximately $75.8 million from sixty-eight investors and that they lost in excess of $20 million.

(Dkt. 6-1, pp. 4-5.)

With respect to specific amount of loss, the plea agreement also stated: "The parties agree that the loss is at least $16 million, and the defendant is aware that the government believes it can establish at sentencing that the loss exceeds $20 million. (*Id*., p. 8.)

The Court accepted Palmer's plea and ordered a Presentence Investigation Report ("PSR"). The PSR calculated the total loss amount resulting from Palmer's conduct at close to $30 million. (PSR, ¶ 24.) Palmer's counsel filed objections to this loss amount, arguing Probation had relied upon an exhibit prepared by Mr. Klein which calculated the total loss amount as $28,854,899.79. (4:11-cr-00130, Dkt. 15, p. 2.) Defense counsel suggested the total loss amount should instead be $20,676,199.79. (*Id*., p. 3.) In support of this position, defense counsel contended Probation's estimated total loss amount included $8,178,700 owed to Duane Yost ("Mr. Yost"), Palmer's brother-in-law. Defense counsel suggested that because Mr. Yost actively participated in soliciting investors for Trigon, as well as invested his own money, he could not be considered a victim of the crime. Defense counsel argued the total loss amount should exclude any losses attributable to Mr. Yost. Defense counsel also suggested that since a corrected loss amount of $20,676,199.79 hovered near the threshold of the enhancement under

§ 2B1.1(b)(1)(L) for losses above $20 million, the Court should err on the side of caution and apply the lower enhancement for losses between $7 and $20 million. (*Id*., p. 3.)

Probation responded that it had utilized loss amount calculations by the government which did not include amounts attributable to Mr. Yost. Because the loss amount supported by the government's evidence was over $29 million, well-above the $20 million enhancement threshold, and because Palmer had not provided any evidence to refute this total, Probation did not amend the PSR. (Addendum to PSR, ¶ 4.)

Palmer's counsel continued to object to the total loss amount at sentencing, and again suggested the total loss was roughly $20 million. (Dkt. 6-1, pp. 73-74.) Defense counsel contended the Court should show some leniency and impose the lower enhancement for $7-20 million since the estimated loss amount was so close to the threshold of an additional enhancement for losses over $20 million. (*Id*.) The government advocated for the method of calculating loss and restitution amounts directed by the sentencing guidelines. (*Id*., pp. 96-97.) The Court agreed with and accepted the government's calculation of $29,954,381 total loss, and applied the additional two-level enhancement for losses over $20 million when sentencing Palmer.

In addition to the total loss amount, Palmer's counsel objected to the PSR's two-level enhancement for the use of sophisticated means pursuant to § 2B1.1(b)(9)(C). (4:11-cr-00130, Dkt. 15, pp. 3-4.) Palmer's counsel argued the notes to the Sentencing Guidelines indicate "sophisticated means" entail "especially complex or especially intricate offense conduct pertaining to the execution of concealment of an offense." (*Id*.) (citing application notes to § 2B1.1(b)(9)(C)). The notes continued "[c]onduct such as

5

hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts" would indicate sophisticated means. (*Id.*) Palmer's counsel suggested no such "sophisticated" conduct occurred in Palmer's case, and that Palmer's activity constituted a "garden variety Ponzi scheme." (*Id.*)

In response to Palmer's objections, Probation declined to amend the PSR, noting Palmer used promissory notes in the course of his scheme in an attempt to circumvent federal regulations and to avoid prosecution. (Addendum to PSR, ¶ 6.) Palmer's attorney continued to argue against the "sophisticated means" enhancement at sentencing. (Dkt. 6-1, pp. 75-76.) Palmer's counsel argued there were no offshore accounts or shell corporations, and that Palmer's operation was simply "money in, money out." (*Id.*, p. 76.) The Court determined the sophisticated means enhancement was appropriate, noting Palmer "used promissory notes to get around the federal regulations," and also issued investors false monthly statements containing fraudulent misrepresentations. (*Id.*, p. 84.)

The Court sentenced Palmer to 96 months imprisonment followed by three years supervised release. One of the conditions of Palmer's supervised release, which was included in the PSR but not objected to by Palmer's counsel either before or during sentencing, bars Palmer from being employed "in any capacity related to billing; receiving money; conducting wire transfers; providing investment advice; trading in stock and commodities markets for others; or given fiduciary responsibilities of any kind…without the permission of the probation officer." (Dkt. 6-1, p. 91.)

After his sentencing, Palmer appealed to the Ninth Circuit regarding the loss and restitution amounts and the length of his sentence. The Ninth Circuit dismissed the

appeal to the extent Palmer sought to challenge the length of his sentence, since Palmer waived his appeal rights in his plea agreement. (4:11-cr-00130, Dkt. 37.) With respect to the loss and restitution amounts, the Ninth Circuit determined the calculations were considered, the information was reliable, and that Palmer could not prevail on appeal. (*Id.*, p. 3) Palmer timely filed the instant § 2255 motion on March 31, 2014.

## STANDARDS OF LAW

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U.S.C. § 2255(a). Although there are four categories, the range of claims which may be raised in § 2255 motion are narrow. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). A motion filed pursuant to § 2255 must allege specific facts which, if true, would entitle the individual to relief. *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that a federal judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief[.]" If the Court does not dismiss pursuant to

Rule 4(b), the Court shall order the government to "file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id*.

The Court may dismiss a § 2255 motion at other stage of the proceedings, such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings, incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the motion, it proceeds to a determination as to whether an evidentiary hearing is warranted. Although the burden is on the movant to establish entitlement to an evidentiary hearing, the burden is "fairly lenient" and a hearing is warranted, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Rodrigues*, 347 F.3d at 824. Stated another way, an evidentiary hearing is warranted if "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). Conversely, no hearing is required if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id*. (citations omitted). Further, an evidentiary hearing is not needed in a § 2255 case when facts can be determined from evidence in the record and prior testimony, or where the allegations in the petition are "vague [or] conclusory." *Hendricks v. Vasquez*, 908 F.2d

490, 491 (9th Cir. 1990) (citation omitted); *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

## ANALYSIS

Palmer raises four challenges to his sentence, specifically: (1) that Palmer's attorney was ineffective for failing to properly challenge loss calculations pursuant to USSG § 2B1.1(b)(1); (2) that Palmer's attorney was ineffective for failing to properly object to and argue in mitigation of the aggravating enhancement imposed for use of sophisticated means pursuant to USSG § 2B1.1(b)(9); (3) that Palmer's attorney was ineffective for failing to argue in mitigation of guideline calculation pursuant to USSG § 5K2.(d)(5); and (4) that Palmer's attorney was ineffective for failing to challenge improper and overbroad terms and conditions imposed as part of his supervised release.

As noted, Palmer's plea agreement reserved the right to file one § 2255 motion on the basis of ineffective assistance of counsel only if based solely upon information not known to Palmer at the time the Court imposed the sentence, and, if, in the exercise of reasonable diligence, the information could not have been known by Palmer at that time. (Dkt. 6-1, pp. 10-11.) Other than an ineffective assistance of counsel claim under the aforementioned limitation, Palmer waived the right to bring any other collateral challenge to his conviction and sentence.

A waiver is enforceable if it is knowing and voluntary and the language of the waiver covers the grounds raised on appeal. *United States v. Bibler*, 495 F.3d 621, 623-24 (9th Cir. 2007). Knowing and voluntary waivers of appellate rights in criminal cases are regularly enforced. *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). The

proper enforcement of appeal waivers serves "an important function in the judicial administrative process by 'preserv[ing] the finality of judgments and sentences imposed pursuant to valid plea agreements." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) (quoting *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992)).

Palmer does not suggest that his waiver was unknowing or involuntary, and instead contends his motion falls within the exception for one § 2255 motion for ineffective assistance of counsel permitted under his plea agreement. (Dkt. 1-1, pp. 3-4.) As the government notes, Palmer fails to allege that any of the facts upon which he bases his § 2255 motion were unknown to him, or could not have been known to him in the exercise of reasonable diligence, at the time the Court imposed the sentence. (Dkt. 6, p. 7.) Indeed, Palmer clearly knew about the loss amounts claimed by the government at the time the PSR was distributed, as evidenced by his counsel's objections to the loss amount identified in the PSR, and continued objections to this amount during sentencing. Palmer similarly knew about and objected to the sophisticated means enhancement, both at the PSR stage and during sentencing. The terms and conditions of Palmer's supervised release, including the term regarding future employment to which Palmer now objects, were also provided in the PSR and applied by the Court during sentencing. Further, with respect to a departure for assistance under 5K2.0, Palmer knew the extent of his assistance both before and during sentencing.

In short, Palmer has not identified any new information not known to him at the time of sentencing, and has not established his § 2255 motion falls within the limited exception for one ineffective assistance of counsel claim permitted under the waiver

10

provision of his plea agreement. Palmer instead suggests the waiver does not apply because he could not somehow "precognitively have known that his attorney had failed him" at the time he was sentenced. (Dkt. 8, p. 2.) Even if the Court were to agree and find Palmer's claims fall within the exception to the waiver, Palmer fails to establish he received ineffective assistance.

   *1. Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) that his representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)) (internal quotation marks omitted). This two-part test is applicable to cases where, as here, a defendant claims ineffective assistance of counsel during a guilty plea. *Hill*, 474 U.S. at 58. A court may evaluate the elements of ineffective assistance of counsel in either order, and need not consider both elements if there is an insufficient showing of one. *Strickland*, 466 U.S. at 697.

To meet the "performance" prong of the *Strickland* test, a defendant must show counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance must be "highly deferential" as it "is all too tempting for a

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* (citing *Engle v. Isaac*, 456 U.S. 107 (1982)).

If a defendant can establish constitutionally deficient performance, he must also demonstrate actual prejudice resulting from the attorney's substandard performance. *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364-65 (1981)). As such, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.*

    a. **Loss Calculation**

Palmer's first claimed error is that his counsel was ineffective in failing to adequately challenge the loss amount used to enhance his sentence two levels under § 2B1.1(b)(1)(L).[3] Palmer first challenges the inclusion of any losses to Mr. Yost in the

---

[3] Palmer somewhat misleadingly states "[b]ecause the loss attributed to him was in excess of $20,000,000, pursuant to § 2B1.1(b)(1)(L), twenty-two (22) offense levels were added to Palmer's base offense level." (Dkt. 1-1, p. 5.) While a loss in excess of $20,000,000 does carry an enhancement of 22 levels over a loss of $5,000 or less, Palmer neglects to mention that a loss of more than $7,000,000 carries a 20 level enhancement over a loss of $5,000 or less. § 2B1.1(b)(1)(K). Thus, the enhancement for a loss over $20 million pursuant to § 2B1.1(b)(1)(L) in reality enhanced Palmer's sentence only two (Continued)

total loss amount, suggesting elimination of the loss claimed by Mr. Yost "of almost $9,000,000" (in reality $8,100,000) would "easily reduce Palmer's 'loss' and 'restitution' to something less than the $20,000,000 threshold for application of subsection (L)." (Dkt. 1-1, p. 7.) Palmer also argues the loss amount should have been further adjusted to account for a "number of other entities that were controlled by Duane Yost, some of which had net gains." (*Id*.) However, the loss calculation put forth by the government and accepted by the Court did not include the $8,100,000 loss to Mr. Yost, nor did any entities controlled by Mr. Yost appear in the loss calculation. (Dkt. 6, pp. 8-9; Dkt. 6-1, pp. 96-97).[4] Moreover, Palmer's counsel argued that Mr. Yost's losses should have been excluded from the total loss calculation both in his objections to the PSR and before the Court during sentencing. Because such losses had already been excluded, both Probation and the Court rejected this argument. Palmer's claim that his counsel was ineffective for not making a baseless argument that his counsel in fact made, and the Court clearly rejected, is rather incomprehensible.

---

levels from the sentence he would have received under § 2B1.1(b)(1)(K) for a loss over $7 million. As Palmer admitted both that the loss was at least $16 million, and that investors lost "in excess of $20 million" in his plea agreement, he was clearly subject to the 20-level enhancement under § 2B1.1(b)(1)(K), and could only escape the 22-level enhancement under § 2B1.1(b)(1)(L) if the Court decided to err on the side of leniency. (Dkt. 6-1, pp. 4-5, 8.)

[4] The latter citation is to the government's Exhibit 1, presented by the government at sentencing and ultimately relied upon by the Court. Calculating the total loss at $29,954,381, Exhibit 1 did not include any losses attributed to Mr. Yost or to entities under his control.

In his reply brief, Palmer attempts to morph his challenge regarding loss calculation into the claim "that no one, and most specifically his attorney, had the loss calculations or claims forensically analyzed to ensure some degree of accuracy." (Dkt. 8, p. 5.) Palmer also states "although the government goes to great lengths to assert that '[n]either Duane Yost nor any entities under his control appear anywhere within Exhibit 1…what is not said or explained is whether any 'individual investor' recruited by Yost was on that list in any form." (*Id.*) Yet, Palmer fails to identify any specific evidence to suggest the loss calculation was actually inaccurate, nor to name any purported "individual investor" recruited by Mr. Yost included within the government's loss calculation. In essence, Palmer claims the loss amount may (or may not) have been inaccurate and that investors recruited by Mr. Yost, may (or may not) have been included in the loss calculation. Without any evidence either that the loss was inaccurate or that certain investors were improperly included, Palmer has submitted only vague allegations insufficient to establish either that his counsel committed error or that there is a reasonable probability the results of the proceedings would have been any different had the loss calculation been subject to a forensic accounting.

Palmer also claims the government breached his plea agreement by using "information provided by him from one or more of his many debriefings to help establish loss, and thus restitution in excess of the $20,000,000 threshold." (Dkt. 1-1, p. 9.) Palmer fails to identify any specific information which was improperly used against him. Although Palmer faults the government for failing to "actually deny the allegation" that it improperly used new evidence he provided after pleading guilty when calculating the loss

14

amount, the government can hardly deny it used information Palmer fails to identify. (Dkt. 8, p. 7.) Moreover, Palmer conceded in both in the plea agreement and during the change of plea hearing that losses exceeded $20 million. (Dkt. 6-1, pp. 4-5, 24) (stating [R]ecords show that between 2002 and December 2008, Daren Palmer received approximately $75.8 million from sixty-eight investors and that they lost in excess of $20 million."). In light of this concession, Palmer's sentence was appropriately enhanced under § 2B1.1(b)(1)(L).

### b. Sophisticated Means Enhancement

Although Palmer's counsel objected to the sophisticated means enhancement under § 2B1.1(b)(9) both before and during sentencing, Palmer argues his counsel "got it wrong on every front." (Dkt. 8, p. 7.) Palmer faults his attorney for relying upon an inapplicable and improperly cited case, and for failing to argue the issue as a matter of first impression since the only two cases interpreting "sophisticated means" in the Ninth Circuit are "easily distinguishable." (Dkt. 1-1, pp. 10-11; Dkt. 8, p. 8.) Palmer fails to cite any case, whether in this circuit or another, his counsel should have relied upon when challenging sophisticated means. Nor does Palmer offer any new argument as to why the sophisticated means enhancement should not have been applied. The fact is the Court considered Palmer's counsel's arguments with respect to "sophisticated means," and determined Palmer's conduct, and specifically the use of promissory notes and false earnings statements, warranted the guideline enhancement. (Dkt. 6-1, p. 84.) Palmer has not identified any evidence, authority, or argument his counsel should have, but failed to raise during sentencing, and has not established any prejudice as a result.

### c. Additional Departure

Palmer suggests his counsel was ineffective for failing to argue in support of an additional downward departure due to his "unusual" or "extraordinary" cooperation. In support of this contention, Palmer notes he plead guilty seven days after the Criminal Complaint was filed, extensively debriefed and cooperated with the government, and provided substantial assistance in the SEC and CFTC civil actions. (Dkt. 1-1, p. 11.) The government recognized such assistance in its 5K1.1 Motion for Downward Departure, and requested a two-level downward departure prior to sentencing. (4:11-cr-00130, Dkt. 19.) Palmer's attorney highlighted such assistance during sentencing:

> Mr. Palmer has, in fact, done his best to fully cooperate both with this proceeding, this criminal proceeding, but also he cooperated in the civil actions that this Court also presided over. Mr. Palmer has been as open as he can with trying to address the issues and [has done] the best he can [to] make things right.

(Dkt. 6-1, pp. 72-73.)

The Court also considered Palmer's assistance when sentencing Palmer below the guideline range of 97-121 months. (Dkt. 6-1, p. 88) (acknowledging acceptance of responsibility and Palmer's "cooperation and aid to the Government in trying to recoup… assets" were taken into account in fashioning a "fair and just punishment."). In light of this consideration, Palmer's contention that his attorney was ineffective for failing to argue for an additional departure is without support. The Court considered Palmer's assistance and utilized its discretion to sentence him below the guideline range as a result. Additional argument on the subject would have been superfluous, and Palmer's claim that such argument would have altered his sentence is mere conjecture. *United States v.*

16

*Ramos-Medina*, 706 F.3d 932, 941 (9th Cir. 2013) ("[A] defendant's sentence now ultimately depends on the district court's judgment, not on the defendant's eligibility for certain sentencing range adjustments prescribed by the Guidelines.").

### d. Terms of Supervised Release

Finally, Palmer argues his attorney was ineffective for failing to challenge the term of supervised release barring him from being employed "in any capacity related to billing; receiving money; conducting wire transfers; providing investment advice; trading in stock and commodities markets for others; or given fiduciary responsibility of any kind…without permission of the probation officer." (Dkt. 6-1, p. 91.) Palmer suggests such term is "overbroad and unreasonable," as under this condition, "Palmer would be in violation for working as a cashier at a fast food restaurant or a clerk at a convenience store." (Dkt. 1-1, p. 12.) As the government notes, Palmer is only barred from accepting said employment to the extent it is not previously approved by probation. (Dkt. 6, p. 12.) Palmer is not unconditionally barred from such employment, and may work in such fields without prior approval once the three year term of his supervised release expires.

Moreover, a district court's discretion to set conditions of supervised release is broad even when those conditions affect fundamental rights. *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). When "fundamental rights" are affected, the test for validity of probation conditions is whether the conditions are "primarily designed to meet the ends of rehabilitation and protection of the public." *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988) (citing *United States v. Lowe*, 654 F.2d 562, 567 (9th Cir. 1981)). Even assuming Palmer's right to a specific type of employment could be

17

considered fundamental, the term restricting his employment is primarily designed to meet the ends of rehabilitation and protection of the public. Palmer pleaded guilty to a crime of financial fraud. He admitted to accepting over $75 million from investors in the course of his fraudulent scheme, and more than fifty-two victims filed affidavits of loss totaling $29,954,381.[5] (PSR, ¶ 24; Dkt. 6-1, pp. 4-5, 8.) The condition of release limiting Palmer's ability to work in financial fields without prior authorization by Probation promotes rehabilitation and protects the public from a situation that might lead to repetition of further financial fraud. (Dkt. 6-1, p. 91.)

In sum, Palmer has not submitted evidence or argument to establish a "reasonable probability sufficient to undermine confidence in the outcome," with respect to any of his four claimed errors. *Strickland*, 466 U.S. at 694. As Palmer has not put forth a plausible claim of ineffective assistance of counsel, the Court need not hold an evidentiary hearing and denies Palmer's § 2255 motion.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. Palmer's Motion to Set Aside, Vacate or Correct Sentence Pursuant to 28 U.S.C. (Dkt. 1) is **DENIED**;

---

[5] Such affidavits were filed during the course of the receiver's investigation in the civil suit against Palmer.

2. The government's Motion to Dismiss (Dkt. 6) is **GRANTED**.

DATED: November 24, 2015

_____
Edward J. Lodge
United States District Judge